IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 3:13cr30-MHT |
| **ENRIQUE ZUNUN-MORALES** | ) | (WO) |

OPINION

Defendant Enrique Zunun-Morales pled guilty to illegal reentry of a removed alien, 8 U.S.C. § 1326(a) & (b)(1). On November 14, 2013, he appeared before the court for sentencing based upon a Sentencing Guidelines range of 46 to 57 months. The court granted his motion for a variance and, applying the factors set forth in 18 U.S.C. § 3553(a), sentenced him to 20 months. The court orally gave its reasons for the variance at the sentencing hearing; however, for the sake of clarity, this opinion outlines those reasons.

Zunun-Morales's high guidelines range was driven by a previous conviction for aiding and abetting in the transportation of illegal aliens within the United

States, 8 U.S.C. § 1324(a)(1)(A)(ii) and 18 U.S.C. § 2. Guideline 2L1.2(b) of the United States Sentencing Guidelines provides a graduated sentencing enhancement for immigrants who reenter the United States after being convicted of a crime. The extent of the enhancement differs "depending on the serious of the prior aggravated felony and the dangerousness of the defendant." U.S.S.G. app. C, reason for amdt., amdt. 632. Guideline 2L1.2(b) provides for the largest enhancement, 16 levels, for individuals who were convicted of

> "a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense."

U.S.S.G. § 2L1.2(b)(1)(A) (emphasis added). An alien smuggling offense is defined as any violation of 8 U.S.C. § 1324(a)(1)(A) and (a)(2). See § 2L1.2 cmt. n. 1(B)(i); 8 U.S.C. § 1101(a)(43)(N). Zunun-Morales's prior

2

conviction falls under this definition of an alien smuggling offense.

Alien smuggling is a serious area of concern for federal law enforcement. There are people who make a profession out of either helping prospective immigrants cross the border illegally or transporting those immigrants to other parts of the country after they cross. Such smugglers have a multiplier effect on violation of our immigration laws; each smuggler that enters the country likely leads to the entry of many other immigrants. Smugglers often endanger the physical safety of potential immigrants by taking them through dangerous regions of the border or "packing as many people as they can into vehicles and driving recklessly to avoid capture." See Randal C. Archibold, <u>Risky Measures by Smugglers Increase Toll on Immigrants</u>, N.Y. Times, August 9, 2006. Finally, smugglers support organized crime throughout the United States, Mexico, and Central America, taking money from potential immigrants

and bribing law enforcement officials and organized crime organizations to procure safe passage. Steven Dudley, Migration Policy Institute, <u>Transnational Crime in Mexico and Central America</u> 14-15 (2012).

However, this case illustrates that Guideline 2L1.2's definition of alien smuggling reaches farther than the government's interests justify. Zunun-Morales was arrested while he was traveling from Arizona to North Carolina. He was sitting in the front passenger seat of an SUV, and four additional illegal immigrants were in the rear passenger seats. A jury convicted him of helping to transport illegal aliens within the United States, with knowledge that they were illegal and in furtherance of their illegal presence of the United States. However, the evidence shows that Zunun-Morales received no compensation for the drive to North Carolina. In fact, he had just crossed the border and had also paid the driver to get to North Carolina. The assistance Zunun-Morales provided to the driver of the SUV was motivated by his

own desire to be transported to North Carolina along with the other passengers in the vehicle and possibly out of his personal relationship with the passengers. His actions were illegal, but they occurred as a result of his own desire to be in the United States, not out of a profit motive or as part of a broader course of smuggling illegal aliens into or around the United States.

Especially in the context of transporting aliens within the United States, there is a difference between smuggling aliens for profit and committing the same offense for other, personal reasons. An earlier version of Guideline 2L1.2 recognized the distinction. Until 2003, the 16-point enhancement applied to "alien smuggling offenses committed for profit." U.S.S.G. app. C, amdt. 658. The Commission amended the guideline to align it with the statutory definition of alien smuggling at 8 U.S.C. § 1101(a)(43)(N).  At the time, the Commission claimed that the change "is consistent with the guideline's previous terminology of 'alien smuggling

offense committed for profit,' and results in a 16 level increase only for the most serious of such offenses." U.S.S.G. app. C, amdt. 658, reason for amdt. Although the current definition does have an exception for assisting, abetting, or aiding a spouse, child or parent, § 1101(a)(43)(N), Zunun-Morales's case illustrates that the 16-level increase currently applies to offenses which are far from "the most serious."[*]

---

    [*]  The definition of alien smuggling may reach even more mundane activities, such as driving fellow illegal aliens to a place where both the driver and passengers intend to work. Some courts have found that such transportation violates 8 U.S.C. § 1324(a)(1)(A)(ii), because "the benefits from finding employment undoubtedly ... assist[] [illegal aliens] in remaining in the United States." United States v. Barajas-Chavez, 152 F.3d 1285, 1290 (10th Cir. 1999); see also United States v. Vasquez, 225 Fed. Appx. 831 (11th Cir. 2007) (affirming on evidentiary grounds a transportation conviction in which an illegal alien was transporting himself and other farmworkers from one farm to another in order to seek work). On the other hand, other courts have held that "attenuated incidents involving minimal employment-related transportation" are not sufficiently related to smuggling to fall within the statute. United States v. One 1984 Chevrolet Truck, 682 F. Supp. 1221, 1226 (N.D. Ga. 1988) (Hall, J.) (citing United States v. Moreno, 561 F.2d 1321, 1323 (9th Cir. 1977)). Nonetheless, if
(continued...)

Finally, Zunun-Morales's previous conviction is not nearly as serious as the other crimes which receive a 16-level increase under Guideline 2L1.2.  The guideline would place Zunun-Morales alongside terrorists, child pornographers, violent criminals, and serious drug traffickers.  Notably, the guideline differentiates between more and less serious drug traffickers, based on the length of their previous sentences. U.S.S.G. 2L1.2(b)(1)(A) & (b)(1)(B). However, the guideline makes no such distinction for alien smuggling offenses. Zunun-Morales is not nearly as dangerous as those with whom the guideline would group him, and there is not as strong a need to deter him and others like him from entering the country.  For these reasons, the court determined that a 16-level increase was inappropriate in Zunun-Morales's case

---

(...continued)
Barajas-Chavez or Vasquez were to reenter the United States, they would also face a 16-level increase based on their previous convictions.

The court then looked back to Guideline 2L1.2 to determine a range that would more accurately reflect his culpability. It is most fair to treat Zunun-Morales as he would be treated if the guideline's definition of alien smuggling were more narrow. Although Zunun-Morales's actions were not as serious as that of terrorists, child pornographers, or others who receive the 16-level increase, he was convicted of an aggravated felony as defined by the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(N). Therefore, the court looked to the guideline's treatment of other people with aggravated felonies; such people would receive an eight-level increase. § 2L1.2(b)(1)(C). The court then calculated Zunun-Morales's offense level with an eight-level, rather than a 16-level, increase. After a three-level downward adjustment for acceptance of responsibility, Zunun-Morales would have received a final offense level of 13 and a guidelines sentence of 18-24 months.

For all of these reasons, the court was convinced that a variance down to a sentence of 20 months was appropriate to satisfy the factors reflected in 18 U.S.C. § 3553(a).

DONE, this the 19th day of November, 2013.

                         /s/ Myron H. Thompson
                       UNITED STATES DISTRICT JUDGE